# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

## CIVIL CASE NO. 1:06cv336
## [Criminal Case No. 1:02cr105-6]

| | | |
|---|---|---|
| **ANTHONY ALLEN LEMAY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| _____ | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____) | | |

**THIS MATTER** is before the Court upon Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [Doc. 1]; Respondent's Motion for Summary Judgment [Doc. 26]; Petitioner's Response to Respondent's Motion for Summary Judgment [Doc. 31]; and Petitioner's Motion to Expand the Record to Include Lemay's Affidavit [Doc. 32].

## STANDARD OF REVIEW

Rule 56(e)(2) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

When a motion for summary judgment is properly made and

supported [by affidavits], an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.[1]

The Court carefully has considered the parties' arguments along with the relevant law, and has determined that Respondent's Motion for Summary Judgment should be granted and Petitioner's Motion to Vacate should be denied and dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 2, 2002, the grand jury returned an indictment for Petitioner and others for participating in a drug conspiracy, in violation of 21 U.S.C. § 846.  See United States v. Randolph, 167 F. App'x 942, 944 (4th Cir. 2005) (unpublished).  The object of the conspiracy was an effort to possess with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. § 841.  See id.

On December 18, 2002, the district court appointed Reid G. Brown to represent Petitioner.  [1:02cr105-6 Doc. 18.]  On February 13, 2003, Brown filed a motion to withdraw as counsel.  [Doc. 25 Ex. 2: Mot. To Withdraw.]  In

---

[1] Effective December 1, 2010, Rule 56 has been amended.  The concept expressed in former subsection (e)(2), however, remains.  See Rule 56 (c)(1)(B) and (e)(2).  Since the motion and responses were filed prior to the effective date of the amendments the Court cites to the version in effect at the tie of the filing.  The amendments are not germane to the issues presented herein.

his motion, Brown asserted, among other things, that Petitioner had been abusive and insulting, that communication had broken down, and that Petitioner would not assist in the defense of his case. See id. The Court held a hearing on the motion on February 21, 2003 and denied it by written Order on the same day. [Doc. 25 Ex. 3: Order Den. Mot. to Withdraw.] The Court concluded that Petitioner's dissatisfaction with Brown derived more from his dislike for the advice he had received than from any incompetence or ineffectiveness on Brown's part. [Id. at 4]. The Court also found the motion to be untimely. [Id. at 3]. At the hearing, the Court advised Petitioner that he could either proceed pro se, with Brown acting as his standby counsel, or he could continue being represented by Brown. [Id.]. Petitioner chose to continue being represented by Brown. [Id.].

On February 24, 2003, Petitioner entered into a plea agreement with the Government by which he agreed to plead guilty to the conspiracy charge in the indictment. [1:02cr105-6 Doc. 132.] By that plea agreement Petitioner waived "the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action," excluding only claims of ineffective assistance of counsel and prosecutorial misconduct. [Id. at ¶ 15]. On February 28, 2003, the court accepted Petitioner's guilty plea and found that he had entered into the plea agreement knowingly and voluntarily. [Doc. 25

Ex. 5: Plea and Rule 11 Hr'g Tr. 40:1-8.]  In responding to the Court in the plea proceedings, Petitioner asserted that he was satisfied with the services of Brown as his counsel. [Id. at 25:6-10].

On March 18, 2003, Petitioner filed a motion requesting release on bond on the ground that his mother was terminally ill with brain cancer.  [1:02cr105-6 Doc. 150.]  On March 28, 2003, the court released Petitioner with electronic monitoring on a $10,000 unsecured bond. [Id. at Doc. 156].  On July 16, 2003, he absconded and was not apprehended until February 16, 2004. [Id. at Docs. 201, 264].

Petitioner's original presentence report ("PSR"), prepared prior to his absconding, recommended an adjusted offense level of 39, which combined with a criminal history category of IV yielded a sentencing range of 360 months to life.  See United States v. Randolph, 167 F. App'x at 945.  The PSR, however, was revised after Petitioner absconded, and the revised version recommended an adjusted offense level of 43 (the highest possible offense level under the Guidelines), which yielded a mandatory life sentence. [Id.].  The increased offense level resulted from a two-level enhancement for absconding and the loss of a three-level reduction for acceptance of responsibility. [Id.].

On February 23, 2004, the district court conducted Petitioner's

sentencing hearing.  [Doc. 25 Ex. 9: Sentencing Hr'g Tr.]  Upon learning that Brown had not had an opportunity to meet with Petitioner prior to the hearing, the Court recessed to allow Brown and Petitioner to consult. [Id. at 1:11-2:21]. Petitioner initially requested that Brown seek a continuance of the hearing so that they could properly respond to the revisions to the PSR. [Id. at 4:10-11]. Brown, however, was of the view that the PSR modifications were "appropriate." [Id. at 4:10-15].  When the Court asked Petitioner directly for reasons justifying a continuance of the sentencing proceedings, Petitioner offered none. [Id. at 5:3-7].  Brown filed objections to the amount of cocaine attributable to Petitioner, as well as the role-in-the-offense and firearm enhancements. [Id. at 5:14-19].  He also objected to the PSR modifications that added a two-level enhancement for obstruction of justice and deleted the three-level reduction for acceptance of responsibility.  [Doc. 25 Ex. 9 34:6-11, 34:22-35:4.]  Additionally, Counsel moved for a downward departure. [Id. at 35:14-22].  At the conclusion of the sentencing hearing, the Court imposed a sentence of life imprisonment, in accordance with the PSR. [Id. at 39:17-22].

Petitioner filed a timely notice of appeal.  On appeal, he raised five claims:  (1) that the district court improperly enhanced his sentence based on facts not admitted in connection with his guilty plea, in violation of the Sixth Amendment; (2) that the court unconstitutionally required him to choose

between his right to counsel and his right to a trial; (3) that the court erred in denying him the appointment of a new lawyer; (4) that his counsel was constitutionally ineffective; and (5) that he was entitled to a new trial because the transcript of the hearing on his lawyer's motion to withdraw was unavailable.[2] Randolph, 167 F. App'x at 946. The Fourth Circuit found that in connection with his plea agreement, Petitioner had waived "the right to contest either the conviction or sentence in any direct appeal or other post-conviction action," reserving only the right to appeal claims of ineffective assistance of counsel and prosecutorial misconduct. Id. The court held that all of Petitioner's claims except his ineffective assistance of counsel claim fell within the scope of the appeal waiver and were barred on appeal. Id. at 947. The court declined to address the merits of Petitioner's ineffectiveness claim because it did not conclusively appear from the record that Petitioner's trial counsel was ineffective. Id. The court affirmed Petitioner's conviction and dismissed his appeal in part. Id. at 948.

On October 11, 2006, Petitioner timely filed the instant § 2255 Motion

---

[2]The hearing on counsel's motion to withdraw was electronically recorded because no court reporter was present. At the time of the appeal, no transcript of the recording had been made. Subsequently, the Court had an official transcript prepared from the electronic recording of the hearing on counsel's motion to withdraw. [1:02cr105-6 Doc. 516.]

to Vacate, Set Aside, or Correct Sentence.[3] [Doc. 1] In his motion, Petitioner asserts numerous claims: (1) that at the time of the commission of the offense, he was unable, as a result of a severe mental disease or defect, to appreciate the nature and quality of his acts, such that he was legally insane; (2) that Petitioner's guilty plea was neither knowing nor voluntary, as he was advised by counsel that if he pled guilty, he would face only a sentence between 188 and 235 months' imprisonment; (3) that the Court improperly conducted Petitioner's Rule 11 colloquy, rendering it a perfunctory proceeding; (4) that trial counsel provided ineffective assistance of counsel in failing to have Petitioner's mental health evaluated by a professional, notwithstanding counsel's knowledge that Petitioner was exceptionally close to his mother and his mother was diagnosed with terminal brain cancer shortly after Petitioner was indicted; (5) that trial counsel provided ineffective assistance of counsel in "rush[ing] petitioner into a plea" and the waiver of his

---

[3]Petitioner filed numerous motions in conjunction with his § 2255 motion. They are: Motion to Disqualify Judge Lacy Thornburg and Magistrate Judge Max Cogburn [Doc. 2], Motion for Counsel to Produce Records [Doc. 4], Motion for Appointment of Counsel [Doc. 12], Motion for a Competency Evaluation [Doc. 13], Motion for an Evidentiary Hearing [Doc. 14], Motion for Permission to Employ Discovery Devices [Doc. 15], Motion for Writ of Habeas Corpus Ad Testificandum [Doc. 16], Motion for Hearing [Doc. 17], Motion for Production of Copy of Electronic Sound Recording [Doc. 18], Renewed Motion for Production of Copy of Electronic Sound Recording [Doc. 20], Motion to Strike Affidavit Supporting Motion for Summary Judgment [Doc. 30], and Motion to Expand the Record to Include Affidavit [Doc. 32]. All of the aforementioned motions were denied, except the Motion to Strike the Affidavit Supporting the Motion for Summary Judgment [Doc. 30], which was granted, and the Motion to Expand the Record to Include Affidavit [Doc. 32], which is a subject of this Order.

appellate rights without adequately inquiring about Petitioner's past or the offense conduct; (6) that the Court erred in failing to order *sua sponte* a psychiatric examination of Petitioner prior to the acceptance of his guilty plea, where Petitioner's incompetency was apparent; (7) that the Court erred in forcing Petitioner to choose between his right to counsel and his right to go to trial; (8) that trial counsel failed to provide effective representation insofar as he failed to provide copies of discovery, met with Petitioner only three times before trial was to begin, failed to assert arguments pursuant to Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004), failed to present arguments in response to the sentence enhancements, and failed to present evidence in mitigation of Petitioner's having absconded; (9) that the Court clearly erred in denying Petitioner's request for new counsel; (10) that the Court erred in denying Petitioner's motion to supplement the record on appeal; (11) that Petitioner is entitled to a new trial because of the unavailability of a transcript of the hearing on Mr. Brown's motion to withdraw as Petitioner's counsel; (12) that the Court plainly erred in enhancing Petitioner's sentence based on facts not admitted by Petitioner or found by a jury beyond a reasonable doubt; (13) that Petitioner's trial counsel provided ineffective assistance of counsel insofar as counsel failed to call witnesses to testify at Petitioner's sentencing hearing as to issues

of drug quantity, role in the offense, and firearms; (14) that Petitioner's counsel failed to advocate effectively during the sentencing hearing, speaking against Petitioner's interests; (15) that the Court violated Federal Rule of Criminal Procedure 32(i)(1)(A) in failing to confirm that Petitioner had read the amended PSR prior to sentencing him based on those amendments; (16) that appellate counsel provided ineffective assistance of counsel in failing to argue the Court's error under Rule 32(i)(1)(A); (17) that the Government failed to prove beyond a reasonable doubt that Petitioner distributed crack cocaine, for purposes of the application of the United States Sentencing Guidelines, as opposed to some other form of cocaine base; (18) that the Court lacked jurisdiction to prosecute Petitioner because 18 U.S.C. § 3231 was never enacted into positive law and is unconstitutional on its face; and (19) that the Court abused its discretion in sentencing Petitioner to a sentence disparate from the sentence received by his co-defendants.

Respondent filed a Response [Doc. 25] to the Petition and a Motion for Summary Judgment [Doc. 26] on August 1, 2007. Respondent argued that it was entitled to summary judgment on all of Petitioner's claims alleging ineffective assistance of counsel. [Doc. 25 14-20.] Respondent also argued that Petitioner had waived his right to raise his other claims in post-conviction proceedings by virtue of the plea agreement that he had signed. [Id. at 20-22].

Alternatively, Respondent argued, the claims were barred either because they already had been raised and decided against Petitioner on direct appeal, or because Petitioner could have raised the claims on direct appeal and has not made the requisite showing to overcome the procedural bar. [Id. at 22].

Petitioner filed a response to the Government's Motion for Summary Judgment on September 24, 2007, which he denominates as a "Reply," [Doc. 31.] In his Response ("Reply"), Petitioner has reconstructed some of his ineffective assistance of counsel claims and *withdrawn* his claims that do not allege ineffective assistance of counsel. [Id. at 6]. He presents his reconstructed claims, as follows:

> 1. Denial of Effective Assistance of Counsel related to Plea Agreement, Cooperation and Waiver of Rights Process;
>
> 2. Denial of Effective Assistance of Counsel Related to Guilty Plea Proceedings;
>
> 3. Denial of Effective Assistance of Counsel – Complete Breakdown of the Attorney-Client Relationship;
>
> 4. Denial of Effective Assistance of Counsel Related to __ Apprendi/Blakely-type arguments;
>
> 5. Denial of Effective Assistance of Counsel Related to Sentencing Issues; and
>
> 6. Denial of Effective Assistance of Appellate Counsel.

[Id. at 6, 19] ("Lemay's §2255 claims (as refined in this Repy [sic]) are not so incredible or frivolous to justify denial without factual development.").

Petitioner also filed a Motion to Expand the Record to Include an Affidavit. [Doc. 32]. On November 11, 2007, Petitioner filed a supplement to his § 2255 motion and response to the Government's Motion for Summary Judgment. [Doc. 35].

On November 14, 2008, Petitioner filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), seeking a reduction in his term of imprisonment on the grounds that it was imposed based on a guideline sentencing range that subsequently was lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(u). [Doc. 445.] The Court granted the Motion, finding that under the new guidelines, Petitioner's amended base offense level was 42, putting him in the guidelines range of 360 months to life. [Doc. 462.] The Court reduced Petitioner's sentence to 360 months. Id.

### III. DISCUSSION

Because Petitioner has reconstructed and refined the ineffectiveness claims raised in his § 2255 motion and has withdrawn his other claims [Doc. 31: Resp. to Mot. for Summ. J. 6, 19], the Court will address Petitioner's claims as they are raised in the Response to the Government's Motion for Summary Judgment, rather than as they were raised in the § 2255 motion.

## A. Involuntary Guilty Plea Due to Ineffective Assistance of Counsel (Claims I & II of Petitioner's Response)

Petitioner claims that but for the ineffectiveness of counsel during the plea agreement process, he would not have pled guilty and would have gone to trial. In Strickland v. Washington, the United States Supreme Court articulated a two-pronged test to determine whether "counsel's assistance was so defective as to require reversal of a conviction or death sentence." 466 U.S. 668, 687-88 (1984). A petitioner first must show that counsel's representation was deficient and must next show that counsel's errors prejudiced the defense so seriously "as to deprive the Defendant of a fair trial, a trial whose result is reliable." Id. at 687. In measuring counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689.

To demonstrate prejudice, a petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). Under these circumstances, a petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney General of State of Md., 956 F.2d 1290, 1297 (4th Cir.1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir.1983)).

A petitioner seeking post-conviction relief bears a heavy burden to overcome the presumption that counsel's conduct was within the wide range of reasonable professional assistance, and the presumption is not overcome by conclusory allegations. Carpenter v. United States, 720 F.2d 546, 548 (8th Cir.1983). Indeed, a petitioner bears an even heavier burden where the claim of ineffective assistance of counsel follows the entry of a guilty plea. Where a defendant has entered a plea of guilty, he must show that but for counsel's unprofessional errors, a reasonable defendant would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). Courts have stated that this inquiry is an "objective one based on whether going to trial might reasonably have resulted in a different outcome." Martin v. United States, 395 F.Supp.2d 326, 329 (D.S.C. 2005); see also Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001) (finding that in light of overwhelming evidence of guilt and lack of available defenses, petitioner could not establish prejudice under the modified "reasonable probability" standard); and Burket v. Angelone, 208 F.3d 172, 190-91 (4th Cir. 2000) (same).

Petitioner contends that trial counsel coerced him into signing the plea agreement by indicating that if he did not, counsel would refuse to help him at trial; that counsel agreed to provisions in the plea agreement that Petitioner

had not agreed to; that counsel did not adequately explain the plea agreement terms, including the waiver provisions; and that counsel failed to investigate the facts of the case or interview material witnesses. [Doc. 31: Resp. to Mot. for Summ. J. 9 ¶1, 10 ¶2.] Petitioner also contends that counsel was ineffective for miscalculating his sentencing range under the plea agreement. [Id. at 11-13]. Petitioner accuses counsel of rendering ineffective assistance by agreeing to a provision in the plea agreement that Petitioner did not agree to, particularly provisions requiring Petitioner to cooperate with the Government, when counsel knew or should have known that he was not interested in cooperating and that the information that he had was of no value to the Government. [Doc. 31: Resp. To Mot. For Summ. J. 7, 9.] Presumably, Petitioner is referring to the portion of the plea agreement in which he agreed to provide substantial assistance if the Government requested it. [Doc. 25 Ex. 4. ¶¶ 18-19.] Petitioner's responses during the Rule 11 hearing, however, contradict his current assertion that the plea agreement contained provisions to which he had not agreed. See infra pp. 16-18. Furthermore, at the hearing on Brown's motion to withdraw, Brown explained that it was Petitioner who requested that steps be taken to try to obtain a downward departure for substantial assistance. [1:02cr105-6 Doc. 516: Mot. To Withdraw Hr'g Tr. 3:2-4:16.] When given the opportunity to speak, Petitioner did not contradict

Brown's statement.

Additionally, Petitioner contends that counsel failed to advise and assist him with the cooperation process, leaving Petitioner to fend for himself during debriefings with law enforcement. Petitioner then asserts that it was counsel's alleged abandonment during this process that caused him to abscond. This factual recitation and argument appear for the first time in Petitioner's Response to the Government's Motion for Summary Judgment. This is fundamentally different from his original claim in that he now alleges constitutional violations unrelated to whether Petitioner's guilty plea was voluntary. Petitioner has not moved to amend his § 2255 motion to add any additional claims. Therefore, this Court will not consider counsel's alleged actions or inactions with respect to whether Petitioner complied with the terms of the plea agreement.

As for Petitioner's assertion that counsel was ineffective for failing to investigate the facts of the case and interview material witnesses, this is wholly conclusory and without support in the record. Not only does Petitioner fail to identify a single "material witness" who counsel should have interviewed, the district court found as a matter of fact that by February 2003, counsel and his associate had spent at least 20 hours reviewing discovery in the case. [1:02cr105-6 Doc. 131.]

The record of Petitioner's Plea and Rule 11 hearing belies the remaining allegations. During his Rule 11 hearing, Petitioner acknowledged to the Court: (1) that no one had threatened or coerced him to enter his plea; (2) that other than the terms of the plea agreement, no one had promised him anything to induce his plea of guilty; (3) that he had read the plea agreement in its entirety and had had sufficient time to discuss it with his attorney; (4) that he agreed with the plea agreement in its entirety; (5) that he and his attorney had discussed how the sentencing guidelines could apply in his case; (6) that he understood that by entering the plea agreement he was waiving his right to appeal his conviction and sentence or to contest them in post-conviction proceedings except on the grounds of prosecutorial misconduct or ineffective assistance of counsel; (7) that he knowingly and willingly waived those rights; (8) that he was satisfied with the services of his attorney; and (9) that he heard and understood all parts of the Rule 11 proceeding and still wished to plead guilty. [Doc. 25 Ex. 5: Plea and Rule 11 Hr'g Tr.] The record further establishes that Petitioner was given the opportunity to ask any questions or make any comments or statements that he wished and that he declined to do so. [Id. at 38:8-13]. Finally, Petitioner signed a statement certifying and affirming that the answers that he gave during the Plea and Rule 11 Hearing were true. [Id. at 39:7-10].

Petitioner's statements on the record during his Rule 11 hearing stand in stark contrast to his belated, self-serving allegations that he was coerced into pleading guilty, that the plea agreement included provisions to which he did not agree; and that counsel did not explain the waiver provisions. Further, Petitioner is bound by the statements he made at the Plea and Rule 11 hearing and those statements cannot be set aside merely on the basis of his post-judgment assertions to the contrary. Rather, Petitioner's statements "constitute a formidable barrier" to this post-judgment attack. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); accord United States v. Lemaster, 403 F.3d 216, 222 (4th Cir. 2005) (affirming summary dismissal of § 2255 motion, including ineffective assistance claim, noting inconsistent statements made during Rule 11 hearing). The Fourth Circuit has held that statements by the defendant during the entry of a guilty plea which show the voluntary and knowing nature of his actions are conclusive absent some compelling reason why they should not be believed. Via v. Supt., Powhattan Corr. Center, 643 F.2d 167, 171 (4th Cir.1981). Petitioner offers no evidence that his statements made during the Rule 11 proceedings are not credible.

The record also undercuts Petitioner's current contention that he would not have pled guilty had counsel properly calculated the sentencing range to which he was subject under the plea agreement. [Doc. 31 at 11-13.]

According to Petitioner, counsel failed to take into consideration two potential sentencing enhancements that would take him outside the 188-235 sentencing guideline range presumed in the plea agreement.

Under the plea agreement negotiated by counsel, Petitioner accepted responsibility for 500 grams of cocaine base [1:02cr105-6 Doc. 132 ¶ 3(a) (under seal)], giving him a base offense level of 36, <u>see</u> U.S.S.G. § 2D1.1(c)(2) (2003).[4] Additionally, under the terms of the plea agreement the Government agreed to recommend a three-point reduction for acceptance of responsibility. [1:02cr105-6 Doc. 132 ¶ 3(b) (under seal).] That would have given Petitioner an offense level of 33, which, with a criminal history level of IV, put him in the sentencing guidelines range of 188 to 235 months imprisonment. <u>See</u> U.S.S.G. § 5A Sentencing Table (2003). Furthermore, in the event that Petitioner provided substantial assistance to the Government, it agreed to recommend a downward departure from the sentencing guidelines. [1:02cr105-6 Doc. 132 ¶ 19(b) (under seal).]

Subsequent to Petitioner's guilty plea, the Probation Office prepared a PSR for use by the Court at sentencing. The PSR, as originally calculated, recommended a base offense level of 36 based on the terms of the plea

---

[4]Petitioner was sentenced under the 2003 version of the United States Sentencing Guidelines.

agreement plus a three point reduction for acceptance of responsibility. The PSR also recommended, however, a two-level enhancement for possession of a firearm and a four-level enhancement for his organizational and supervisory role in the conspiracy, which gave Petitioner a total offense level of 39, putting him in the sentencing guideline range of 360 months to life imprisonment. Randolph, 167 F. App'x at 945. Petitioner claims that had he known he was facing exposure to 30 years to life under the plea agreement, he would not have pled guilty and would have gone to trial.

"A miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1994) (rejecting ineffective assistance of counsel claim based on counsel's failure to predict the relevant conduct inclusion in defendant's offense level); see also United States v. Martinez, 169 F.3d 1049, 1053 (7th Cir.1999) ("[A]n attorney's 'mere inaccurate prediction of a sentence' does not demonstrate the deficient performance component of an ineffective-assistance claim."); United States v. Rivera, 898 F.2d 442, 447 (5th Cir.1990) ("[T]he inability of Rivera's counsel to correctly predict the sentence does not constitute ineffective assistance of counsel."); and United States v. Stephens, 906 F.2d 251, 253 (6th Cir.1990) ("[T]he mere fact that an attorney incorrectly estimates

the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement."). Here, there is evidence that counsel did advise Petitioner of at least one of the enhancements. Counsel stated on the record that he had advised Petitioner that if he was convicted at trial, he faced a possible life sentence. [1:02cr105-6 Doc. 516: Mot. To Withdraw Hr'g Tr. 19:11-19.] At Petitioner's criminal history level (IV), he fell within a guidelines range that included a possible life sentence only if the base offense level for quantity of drugs attributable to him was enhanced by at least two levels. See discussion infra pp. 22-23. Furthermore, during the hearing on Brown's motion to withdraw as counsel, Brown specifically referred to the Government's evidence that Petitioner was in possession of a firearm during some of the drug transactions. [1:02cr105-6 Doc. 516 7:11-13.] Regardless, Petitioner has failed to make the requisite showing of prejudice.

The plea agreement that Petitioner signed, states:

The defendant is aware that any sentence imposed will be in conformity with the United States Sentencing Guidelines . . . . The defendant is further aware that the Court has not yet determined the sentence, *that any estimate from any source, including defense counsel, of the likely sentence is a prediction rather than a promise, and that the Court has the final discretion to impose any sentence up to the statutory maximum.*

[1:02cr105-6 Doc. 132 ¶ 2 (under seal) (emphasis added).] At his Rule 11 hearing, Petitioner swore that he had read his Plea Agreement and

understood its terms. [Doc. 25 Ex. 5: Plea and Rule 11 Hr'g Tr.] Furthermore, at the Rule 11 hearing, the Court informed Petitioner that the statutory maximum sentence for the offense to which he was pleading guilty was life imprisonment, and Petitioner stated that he understood. [Id. at 18:1-6]. Additionally, the Court informed Petitioner that neither it, the Government, nor his attorney were permitted to determine the exact guideline range until after a PSR had been prepared and that the Court had the authority to depart from the sentencing guidelines in some circumstances and impose a sentence that was harsher or more lenient than that indicated by the guidelines.[5] [Id. at 26:11-27:1]. Thus, even if Petitioner's counsel told him that a sentence between a certain range was likely, Petitioner should have understood that this statement was not an affirmative representation of fact, but rather a prediction contingent on factors beyond counsel's direct control. If Petitioner's understanding was different, he was given the opportunity to raise that issue at the Rule 11 hearing.

Furthermore, the Court concludes that a reasonable defendant would have accepted the plea agreement under the circumstances of Petitioner's case, even if he had known that he might be subject to a six-level

---

[5] The sentencing hearing in this matter was conducted prior to the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005).

enhancement.  Although Petitioner was indicted on one count of conspiracy to possess with intent to distribute at least 50 grams of cocaine base in violation of 21 U.S.C. §§ 841 and 846, the Government had substantial evidence that Petitioner was responsible for the distribution of more than 30 kilograms of cocaine base during the life of the conspiracy.  Had he gone to trial and been found responsible by a jury for that amount, his base offense level for sentencing purposes would have been 38.  U.S.S.G. § 2D1.1(c)(1) (2003).  The Government also had substantial evidence that during a number of drug transactions, Petitioner possessed and displayed a firearm, and that Petitioner was the organizer and leader of the Transylvania County arm of the conspiracy.   An offense level of 38, plus a two-level enhancement for possession of a firearm and a four-level enhancement for his role in the offense would have given Petitioner a total offense level of 43[6] at sentencing. U.S.S.G. § 5A, cmt. 2 (treating a total offense level of more than 43 as a total offense level of 43).   Based on a total offense level of 43 with a criminal history category of IV, the sentencing guideline range for imprisonment was life imprisonment.  Id. at § 5A Sentencing Table.

The Court believes that a reasonable defendant in Petitioner's position

---

[6] Even though these total to 44, the maximum Total Offense Level under the Sentencing Guidelines is 43.

would have accepted a plea deal that exposed him to a sentencing range of 360 months to life as opposed to risking a trial and a guaranteed life sentence if convicted.  Petitioner was 27 years old at the time of his plea which meant that a sentence at the low end of the guidelines range would have provided for a possibility of a substantial span of years outside of prison.  Furthermore, the Government's evidence supporting the firearms and role-in-the-offense enhancements came not only from co-defendants who had made their own favorable deals with the Government, but from confidential informants who wore wires during drug transactions with Petitioner and from undercover agents from three different law enforcement agencies who conducted separate drug deals with Petitioner.

Because Petitioner was fully aware that his ultimate sentence under the agreement was subject to a later determination by the Court based on a variety of factors at the time he entered into it, the fact that he did not know specifically that he would be subject to sentencing in the 360 months to life range does not mean that it was entered into unknowingly, involuntarily and unintelligently.  Additionally, given the fact that Petitioner pleaded guilty even after being warned by the Court that he faced up to life imprisonment for the count to which he was pleading, his mere allegation that, but for counsel's failure to inform him about the firearms and role in the offense enhancements,

he would have insisted on going to trial, is insufficient to establish prejudice.

**B. Ineffective Assistance of Counsel at Rule 11 Hearing (Claim II of Petitioner's Response)**

Petitioner contends that counsel was ineffective for failing to ensure that the Rule 11 court adequately "questioned and advised" Petitioner about the appeal and § 2255 waivers contained in the plea agreement. [Doc. 31 at 12.] Petitioner also contends that counsel was ineffective for failing to require the Government to present a factual basis to support the criminal count to which he was pleading guilty and the firearms and role-in-the-offense enhancements. [Id. at 12-13].

Rule 11 requires that before accepting a guilty plea, the Court must inform the defendant of, and determine that the defendant understands, the terms of any plea agreement provision waiving the right to appeal or to collaterally attack his sentence. Fed. R. Crim. P. 11(b)(1)(N) (2003). In the plea agreement that he signed, Petitioner agreed to "waive[ ] the right to contest either the conviction or the sentence in any direct appeal or other post-conviction action, including any proceeding under 28 U.S.C. § 2255." [1:02cr105-6 Doc. 132 ¶ 15 (under seal).] Petitioner also agreed that the waiver did not apply to claims of ineffective assistance of counsel or prosecutorial misconduct. [Id.].

During the Rule 11 hearing, the Court inquired of Petitioner whether he

had discussed his right to appeal with his attorney, and Petitioner responded that he had. [Doc. 25 Ex. 5: Plea and Rule 11 Hr'g Tr. 37:6-10.] The Court also inquired of Petitioner whether he understood that the plea agreement provided that he could not appeal his conviction or sentence or challenge either in a post-conviction proceeding unless it was on the grounds of prosecutorial misconduct or ineffective assistance of his own counsel. Petitioner responded in the affirmative. [Id. at 37:11-19]. The Court then asked Petitioner whether despite knowing that he had the right to appeal his conviction and sentence, he nevertheless knowingly and willingly waived that right and the right to initiate post-conviction proceedings. Again, Petitioner responded in the affirmative. [Id. at 37:20-25]. Finally, immediately after the waiver colloquy, Petitioner was given the opportunity to ask questions about anything that had been brought up during the plea hearing. [Id. at 38:8-13]. Petitioner stated that he had no questions. Subsequently he was given a second opportunity to ask questions, and he declined to do so. [Id. at 40:24-25].

In short, the Court adhered to the requirements of Rule 11(b)(1)(N). Petitioner has failed to identify, and this Court has been unable to find, any appellate or Supreme Court case requiring that a Court do more to ensure that a defendant understands the ramifications of the appellate and collateral

attack waivers. In light of the Court's compliance with the requirements of Rule 11(b)(1)(N), as well as Petitioner's statements under oath that he had read and discussed the plea agreement with his attorney and that he understood all of its provisions, counsel cannot be considered deficient for failing to ask the Court to go into more detail with petitioner about the waiver provisions. Strickland, 466 U.S. at 689.

Furthermore, Petitioner's contention that the Court misled him by allowing him to believe that he could raise ineffective assistance of counsel claims on direct appeal is nonsense. [Doc. 31 at 12 ¶2.] A defendant may raise ineffective assistance of counsel claims on direct appeal, and the appellate court will address them on the merits provided that it "conclusively appears from the record that the defendant's counsel was ineffective." Randolph, 167 F. App'x at 947 (internal quotation marks and citation omitted). Otherwise, an ineffective assistance of counsel claim is more appropriately reviewed in a collateral proceeding under § 2255. A defendant is not penalized for raising the same ineffectiveness claim in both proceedings, if the appellate court is unable to rule on the merits of the claim on direct appeal.

Petitioner next contends that counsel was ineffective at the Rule 11 hearing for failing to object or otherwise require the Government to state its factual basis for the criminal charge to which Petitioner was pleading. [Doc.

31 at 12-13.]  Rule 11 requires that before entering a judgment on a guilty plea, the court must determine that there is a factual basis for the plea.  Rule 11(b)(3) (2003).  The district court, however, is not required to find a factual basis during the Rule 11 proceeding itself; if it chooses, it may defer the factual basis until sentencing.  <u>United States v. Martinez</u>, 277 F.3d 517, 531 (4th Cir. 2002).

The plea agreement in this case stipulated that there was a factual basis for Petitioner's guilty plea and agreed that the district court could defer its finding of a factual basis until sentencing.  [1:02cr105-6 Doc. 132 ¶¶ 10(a) & (c) (under seal).]  Furthermore, the plea agreement stipulated that the district court could use the offense conduct set out in the PSR, except any facts to which the defendant objected, to establish a factual basis for the plea. [<u>Id.</u> at ¶ 10(b)].

As has been indicated previously, Petitioner swore under oath at the Rule 11 hearing that he had read and discussed the plea agreement with his attorney and that he agreed with all of its provisions.  Petitioner is bound by the statements he made at the Plea and Rule 11 hearing.  <u>Via</u>, 643 F.2d at 171.  He cannot now complain that counsel was ineffective for failing to object to conduct specifically allowed in the plea agreement.

Furthermore, contrary to Petitioner's assertions, the Government did put

forward a factual basis for the guilty plea, as well as the firearms and role-in-the-offense enhancements.  In doing so, it did not rely solely on the conduct set out in the PSR, but called Special Agent Todd Lockhart, the lead investigator in the case, who testified at sentencing regarding the drug quantity attributable to Petitioner, Petitioner's possession of firearms during some of the drug transactions, and Petitioner's role in the conspiracy.  Finally, trial counsel objected to the drug quantity attributed to Petitioner in the PSR and to the firearms and role-in-the-offense enhancements.

In short, Petitioner has failed to show any deficiency on the part of counsel at the Rule 11 hearing or that counsel's actions at the Rule 11 hearing had any impact on the knowing or voluntary nature of his plea. Consequently, this claim will be denied.

### C.  Ineffective Assistance of Counsel for Failing to Preserve 6th Amendment Issue for Appellate Review (Claim III of Petitioner's Response)

On February 13, 2003, Brown filed a motion to withdraw as counsel. [Doc. 25 Ex. 2: Mot. to Withdraw.]  In his motion, Brown asserted that Petitioner had been "abusive, insulting and would not communicate with counsel, nor assist in the defense of his case," that Petitioner "disagreed with counsel's suggestions and recommendations" and "rejected counsel's knowledge of the case," and that Petitioner had indicated to a third party that

Brown was incompetent. [Id.]. The Court held a hearing on the motion on February 21, 2003, and denied the motion by written Order on the same day. [Doc. 25 Ex. 3: Order Den. Mot. to Withdraw.]

In its Order, the Court found as a matter of fact that Brown and an associate attorney had, *inter alia*, spent approximately twenty hours reviewing discovery, and that they had met with Petitioner to discuss his defense on six different occasions. [Id. at 2]. Only when Brown advised Petitioner that he faced a potential sentence of life imprisonment if he proceeded to trial did Petitioner express dissatisfaction with Brown's services. [Id.]. When the court asked Petitioner to respond to the motion, Petitioner simply asserted that he wanted a different lawyer because he did not like the advice he had received from Brown. [Id. at 2-3]. Based on these facts, the court concluded that Petitioner's dissatisfaction with Brown derived more from his dislike for the advice he had received than from any incompetence or ineffectiveness on Brown's part. [Id. at 4]. The Court also found the motion to be untimely. [Id. at 3]. The court advised Petitioner that he could either proceed *pro se*, with Brown acting as his standby counsel, or he could continue being represented by Brown. [Doc. 25 Ex. 3 3.] Petitioner chose to continue being represented by Brown. [Id.].

On appeal, Petitioner claimed that the trial court erred in denying

Brown's motion to withdraw, effectively forcing him to choose between his right to counsel and his right to a trial. Randolph, 167 F. App'x at 946. The Fourth Circuit determined that Petitioner's claim was barred because it fell under the scope of the appeal waiver in his plea agreement. Id. at 947. In the instant claim, Petitioner claims that Brown was ineffective for failing to preserve the 6th Amendment issue for appeal. [Doc. 31 at 13-15.]

To prevail on this claim, Petitioner must show that counsel's failure to preserve this issue for appeal fell below an objective standard of reasonableness and that it prejudiced the result of the appeal. Strickland, 466 U.S. at 687-88. Even if counsel had been deficient for failing to have this issue excluded from the waiver provision in the plea agreement, Petitioner cannot show that there is a reasonable probability that the Fourth Circuit would have granted his appeal had the issue been properly preserved and raised on direct appeal. Id.

Whether a motion by counsel to withdraw should be granted is within the sound discretion of the district court. United States v. Mullen, 32 F.3d 891, 895 (4th Cir. 1994) In determining whether a district court has abused its discretion in denying a motion to withdraw, an appellate court considers the following: (1) the timeliness of the motion; (2) the adequacy of the district court's inquiry into the defendant's complaint concerning counsel; and (3)

whether the conflict between attorney and client was so great that it resulted in a "total lack of communication preventing an adequate defense." Id.

Turning first to the timeliness issue, this Court found that counsel's motion was untimely not only because it was filed only three weeks before trial was scheduled to begin but also because of the impact granting it would have had on Petitioner's co-defendants, the Government, and the Court's calendar. [Doc. 25 Ex. 3: Order Den. Mot. to Withdraw 3.] Defendant was scheduled to be tried with four co-defendants, and the Court found that granting the motion and appointing new counsel would have necessitated either continuing the case for all five defendants another two months or severing Petitioner's case from the other four defendants and continuing only his case. [Id.]. Continuing the case of all five defendants would deny Petitioner's co-defendants the right to an expeditious resolution of their cases. [Id.]. On the other hand, severing Petitioner's case would require the Government to prosecute two separate trials involving essentially the same evidence and would be an inconvenience for approximately twenty-six civilian and law enforcement witnesses who would have to come to court twice to give the same testimony. [Id.]. The Court found both options to be an inefficient use of the Court's time and resources. [Id.]. For these reasons, there is no reasonable probability that the appellate court would have found counsel's motion to withdraw to have been

timely. <u>See</u> <u>United States v. Gallup</u>, 838 F.2d 105, 108 (4th Cir 1988) (reiterating that the Sixth Amendment right to counsel of one's own choosing, "must not obstruct orderly judicial procedure and deprive courts of the exercise of their inherent power to control the administration of justice," and that "the court is entitled to take into account the countervailing state interest in proceeding on schedule") (citations omitted).

Additionally, the Court's inquiry of Petitioner regarding his conflict with counsel was adequate. <u>Mullen</u>, 32 F.3d at 895. The Court first asked Brown his reasons for moving to withdraw. Brown communicated to the Court that he and his associate had conducted extensive discovery, had shared the relevant discovery with Petitioner, and had explained to Petitioner that if found guilty at trial, he was facing a possible life sentence based upon the amount of drugs attributable to him, as well as certain sentencing enhancements evident from discovery. [1:02cr105-6 Doc. 516 5:2-7:19.] He communicated further that Petitioner refused to believe his assessment of the strength of the Government's case or that he faced a potential life sentence if convicted at trial. The Court then asked to hear from Petitioner who stated that he wanted a different lawyer because in his opinion, Brown was not helping him like he should. [<u>Id.</u> at 8:16-9:18]. When asked for specifics, Petitioner stated that counsel had only met with him once and had not shared

discovery with him. [Id. at 9:12-20]. Based on counsel's representations, however, the Court found otherwise. [Doc. 25 Ex. 3: Order Den. Mot. To Withdraw 2.] It should be noted that Petitioner did not state that he wanted to go to trial or that Brown refused to help him in that regard. In fact, Petitioner stated that he had not yet decided whether he wanted to go to trial or to plead guilty. [Id. at 9:24-10:2]. Consequently, it appears that Petitioner simply did not believe Brown was correct with respect to the amount of time he could face under the sentencing guidelines should he be found guilty at trial and that he wanted a second opinion from a new lawyer. The desire for a second opinion, however, is an insufficient ground for substitution of counsel. See Gallop, 838 F.2d at 108 (stating that an indigent defendant must show good cause as to why he should receive substitute counsel).

Finally, there was no evidence presented by either Brown or Petitioner that the conflict between them was so great that it resulted in a "total lack of communication preventing an adequate defense." Mullen, 32 F.3d at 895. Without doubt, Brown was frustrated with Petitioner's behavior; however, there is nothing to indicate that the level of communication was such that it prevented Petitioner from receiving adequate representation. Indeed, despite Petitioner's abusive behavior, counsel negotiated a plea deal with the Government [1:02cr105-6 Doc. 516 6:6-15]; arranged a debriefing with the

investigating officer; arranged a second debriefing despite Petitioner's failure to cooperate during the first, [Id. at 3:2-4:16]; and arranged for outside counsel to consult with Petitioner about his case, [Id. at 5:24-7:7]. Moreover, Petitioner states under oath at the Rule 11 hearing that he was satisfied with the services of his attorney.

For these reasons the Court concludes that there is no reasonable probability that had this issue been preserved for appeal, the appellate court would have granted the appeal based on the Court's refusal to substitute counsel. Strickland, 466 U.S. at 687-88.

### D. Ineffective Assistance of Counsel for Failing to Raise Apprendi at Sentencing (Claim IV of Petitioner's Response)

Petitioner contends that the firearms, role-in-the-offense, and obstruction of justice enhancements relied on by the Court in determining his sentence were unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004). He claims that counsel was ineffective for failing to challenge the enhancements to his sentence under Apprendi and for failing to preserve the issue for appeal. [Doc. 31 at 15-16.] He further claims that counsel was ineffective for failing to anticipate the United States Supreme Court's holding in Blakely. [Id. at 15].

In Apprendi, the Supreme Court held that any factor, other than a prior conviction, that increases a sentence beyond what would otherwise be the

statutory maximum is an element of the offense and must be submitted to a jury for proof beyond a reasonable doubt (or admitted by the defendant). 530 U.S. at 490. None of the enhancements in Petitioner's case were alleged in his indictment or submitted to a jury, nor did he admit to the conduct that provided the basis for the enhancements.

Although the Apprendi decision was announced in 2000, at the time that this Court sentenced Petitioner in 2004, the Fourth Circuit had construed the term "statutory maximum" as the maximum provided by the statute of conviction. In fact, by 2002, the Fourth Circuit consistently was affirming sentences which included uncharged sentencing enhancements, so long as those sentences did not exceed the maximum term which could have been imposed when such additional judge-made findings were included. See United States v. Lewis, 235 F.3d 215, 218-19 (4th Cir. 2000) (upholding the imposition of uncharged sentence enhancements which did not increase the sentence beyond that provided for by the statute of conviction); United States v. Kinter, 235 F.3d 192, 198-202 (4th Cir. 2000), abrogated by United States v. Booker, 543 U.S. 220 (2005) (same). The maximum sentence for the quantity of drugs to which Petitioner admitted responsibility under 21 U.S.C. §§ 841 and 846 was life in prison.

In Blakely, the Supreme Court clarified that for Apprendi purposes, the

statutory maximum term was the maximum sentence that a state judge could impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  542 U.S. at 303.  United States v. Booker made the holding from Blakely applicable to sentences imposed under the U.S. Sentencing Guidelines, and concluded that the mandatory provisions of the Guidelines are unconstitutional to the extent that they permit judges to find facts relevant to sentencing.  543 U.S. 220, 244-45 (2005).  Blakely, however, was decided after judgment was entered in Petitioner's case, and the law is clear that counsel is not constitutionally deficient for failing to anticipate a new rule of law.  Kornahrens v. Evatt, 66 F.3d 1350, 1360 (4th Cir. 1995).  This is true even when the rule of law is under attack in the United States Supreme Court at the time of trial.  Id.  See also United States v. McNamara, 74 F.3d 514, 517 (4th Cir. 1996) (holding that counsel was not ineffective for following the controlling circuit law at the time); Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (holding that Nickerson's trial counsel could not have been expected to object to the State's peremptory challenges, despite that certiorari in Batson had been granted six months before trial, since Nickerson's trial predated Batson decision by several months), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir.1999).

Accordingly, since the law permitted the enhancements at the time that

Petitioner was sentenced, counsel simply could not have been ineffective for not challenging them on constitutional grounds.[7] <u>Strickland</u>, 466 U.S. at 687-89.  Furthermore, counsel was not ineffective for failing to anticipate the Supreme Court's decision in <u>Blakely</u>.  <u>See</u> id.

### E.  Ineffective Assistance of Counsel at Sentencing (Claim V of Petitioner's Response)

Prior to the sentencing hearing, counsel filed objections to the PSR and a motion for downward departure.  [Doc. 25: Ex. 8 (under seal).]  Included was an objection to the four point enhancement for Petitioner's role in the conspiracy.  [<u>Id.</u> at ¶¶ 3, 8].  Petitioner, however, claims that counsel was ineffective for failing to argue this objection properly.  [Doc. 31 at 16.]  Specifically, Petitioner contends that counsel should have argued that a four point enhancement under U.S.S.G. § 3B1.1(a) was invalid because the Government failed to prove that he managed or supervised five or more people.  [Doc. 31 at 17.]  Petitioner also contends that had counsel called specific co-defendants to testify at the sentencing hearing, they would have testified that he was not a leader or organizer in the conspiracy.  [<u>Id.</u>].

In order to succeed on this claim, Petitioner must allege facts that, if

---

[7]Trial counsel did file objections to the firearms and role-in-the-offense enhancements and argued at sentencing that there was an insufficient factual basis to support them.  [Doc. 25 Ex. 9: Sentencing Tr. 5:17-19.]

true, establish that his "sentence would have been more lenient" absent counsel's alleged errors. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999.) Without the four-point enhancement, Petitioner's base offense level would have been 40, giving him a sentencing range of 360 months to life imprisonment. U.S.S.G. § 5A Sentencing Table. Petitioner, however, is unable to show that but for counsel's alleged errors, he would not have received the four point enhancement.

A defendant's offense level is to be increased by four levels "[i]f the defendant was an organizer or leader of a criminal activity that *involved* five or more participants." U.S.S.G. § 3B1.1(a) (2003) (emphasis added). A "participant" is someone who can be held "criminally responsible" for the commission of the offense. Id. § 3B1.1 cmt. 4. A defendant need only exercise control over one other participant in order to be deemed a leader or organizer. Id. § 3B1.1 cmt. 2.

In determining whether a role in the offense enhancement is warranted, the district court is to consider the following factors:

> (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others.

United States v. Kellam, 568 F.3d 125, 148 (4th Cir. 2009) (citing U.S.S.G. § 3B1.1 cmt. 4).  Looking at the record as a whole, there is ample evidence that Petitioner was a leader or organizer of a criminal enterprise consisting of five or more people.

First, the PSR found that Petitioner was involved in a multi-state conspiracy that involved at least twelve others, including several who supplied Petitioner the drugs that he, in turn, sold in Transylvania County, North Carolina.  The parties had stipulated in the plea agreement that the district court could use the offense conduct set out in the PSR, except any facts to which the defendant objected, to establish a factual basis for the plea.  [Doc. 25 Ex. 4: Plea Agreement ¶ 10(b).]  Petitioner did not object to anyone's identification in the PSR as a co-conspirator.

As for the level of control Petitioner had over his co-conspirators, the testimony elicited at sentencing, as credited by the district court, clearly established that Petitioner was a leader and/or organizer of the group in Transylvania County.  In addition to being personally involved in the selling of drugs, Petitioner retained decision-making authority over the drugs and the people working under him.

Agent Lockhart testified at sentencing that Petitioner either negotiated drug deals himself or required his Transylvania County co-conspirators to

obtain his permission before making a sale. The agent testified that all deals made by confidential informants or undercover agents during the investigation were negotiated directly with Petitioner, either in person or over the phone if Petitioner was not present himself to make the sale. When Petitioner was present during a sale, the money for the drugs was paid directly to him, even if the drugs were handed off by a co-conspirator. Additionally, at least one co-conspirator, Brandon Shook, was recorded during electronic surveillance referring to the drugs he was selling as belonging to Petitioner, and another co-conspirator, Tiffany Beal, told an undercover agent that she had to get permission from Petitioner before she could sell to him.

Agent Lockhart testified further that it was Petitioner who negotiated with the suppliers and that it as he who decided to whom his co-conspirators could sell and to whom they could not. It also was Petitioner who directed Shook to obtain firearms, after he, Shook, and Beal were robbed of their drugs and money during a home invasion. In short, there was ample evidence to support the Court's finding that Petitioner was an organizer and leader in the activities of the conspiracy in the Transylvania County area, who oversaw the acquisition and distribution of large amounts of cocaine.

As for Petitioner's contention that counsel should have called four of his co-conspirators to testify at sentencing, it is highly speculative that any of the

four would have refuted Agent Lockhart's testimony. In fact, three of the four (Beal, Shook, and Stephanie Shipman) cooperated with the Government, and according to Agent Lockhart, corroborated existing evidence that Petitioner was the leader and organizer of the Transylvania County conspiracy.

Petitioner has failed to show that but for counsel's alleged inaction during sentencing, he would not have received a four-level enhancement for his role in the conspiracy. The fact is that but for Petitioner's decision to abscond while out on bond, his guidelines range would have been 360 months to life, with or without the four-level enhancement. It was Petitioner's actions, not his attorney's inaction, that brought about his life sentence.

### F.  Ineffective Assistance of Appellate Counsel (Claim VI of Petitioner's Response)

Petitioner claims that counsel on appeal was ineffective for failing to challenge the voluntariness of the appellate waiver in the plea agreement. [Doc. 31 18 ¶ 1.] Petitioner insists that there existed in the record viable grounds to challenge the voluntariness of the appellate waiver, including the conflict between Petitioner and trial counsel and the allegedly inadequate Rule 11 hearing. [Id. at ¶ 3].

As with claims of ineffective assistance of trial counsel, the standards articulated in Strickland govern claims of ineffective assistance of appellate counsel.  Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (citing Strickland,

466 U.S. at 688, 694 and <u>Smith v. Robbins</u>, 528 U.S. 259 (2000)) (holding that habeas applicant must demonstrate that "counsel was objectively unreasonable" in failing to file a merits brief addressing a nonfrivolous issue and that there is "a reasonable probability that, but for his counsel's unreasonable failure ..., he would have prevailed on his appeal"). Thus, under <u>Strickland</u>, Petitioner's appellate counsel was ineffective only if his failure to challenge the voluntariness of the appellate waiver fell below an objective standard of reasonableness and, but for that failure, Petitioner would have prevailed in his appeal.

Petitioner cannot show that counsel's decision not to challenge the voluntariness of his waiver fell below an objective standard of reasonableness. For the reasons articulated in section III, subsection A, of the instant Order, Petitioner has failed to show that his plea agreement was involuntary in any respect. <u>See</u> discussion <u>supra</u> at pp. 12-23. For the reasons articulated in section III, subsection B, of the instant Order, Petitioner has failed to show that the Rule 11 hearing was constitutionally inadequate in any way. <u>See</u> discussion <u>supra</u> at pp. 24-28. Finally, for the reasons articulated in section III, subsection C of the instant Order, Petitioner has failed to show that he was prejudiced by his conflict with his trial attorney. <u>See</u> discussion <u>supra</u> at pp. 28-34.

Faced with a record showing a voluntary plea agreement, a constitutionally sufficient Rule 11 hearing, and effective assistance of trial counsel, notwithstanding some conflict, appellate counsel's decision not to contest the voluntariness of the appellate waiver did not fall below an objective standard of reasonableness. See Bell, 236 F.3d at 164 ("Counsel is not obligated to assert all nonfrivolous issues on appeal, as there can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.") (internal quotation marks, alterations, and citations omitted). Consequently, Petitioner cannot prevail on this claim. See Strickland, 466 U.S. at 688.

## IV. ORDER

**IT IS, THEREFORE, ORDERED THAT:**

1.  Petitioner's Motion to Expand the Record to Include Lemay's Affidavit [Doc. 32] is **GRANTED**;

2.  The Government's Motion for Summary Judgment [Doc. 26] is **GRANTED**; and

3.  Petitioner's Motion to Vacate, Set Aside or Correct Sentence [Doc. 1] is **DENIED** and this action is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has failed to establish that reasonable jurists

would find that this court's assessment of his constitutional claims is debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484 (2000); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003).  Moreover, Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings in dismissing and denying previously filed motions, (see supra at n. 3), are debatable and that his Motion to Vacate states a debatable claim of the denial of a constitutional right.  Slack, 529 U.S. at 484-85.

Signed: December 15, 2010

Martin Reidinger
United States District Judge