THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:02-cr-00105-MR-WCM-6

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ANTHONY ALLEN LEMAY, )<br>)<br>Defendant. )<br>_____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's "Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" [Doc. 696].

**I.    BACKGROUND**

From January 2000 through December 2002, the Defendant Anthony Allen Lemay was the leader and organizer of a cocaine conspiracy in Transylvania County, North Carolina. [PSR at ¶¶ 9, 15]. During the course of this conspiracy, the Defendant organized and scheduled the delivery of least four ounces (113 grams) of crack cocaine at least every other day. [Id. at ¶ 15]. He also directed the distribution of the product and managed the collection of money from cocaine sales, as well as payment for cocaine deliveries. [Id.] He taught his girlfriend how to order, repackage, and redistribute the product. [Id.]. The Defendant was known to carry firearms

in relation to his drug trafficking. [Id. at ¶¶ 18-19]. An investigating agent estimated that the Defendant was responsible for or had knowledge of over 30 kilograms of crack cocaine during the course of the conspiracy. [Id. at ¶ 21].

A grand jury indicted the Defendant and 12 other co-conspirators, charging them with conspiracy to possess with intent to distribute at least 50 grams of cocaine base in violation of 21 U.S.C. §§ 841, 846. [Doc. 3]. The Defendant pled guilty to this charge pursuant to a written plea agreement. [Doc. 132]. As part of that agreement, the Defendant agreed that he was responsible for 500 grams of cocaine base. [Id. at ¶ 3(a)]. After pleading guilty, the Defendant requested to be released on bond because his mother was terminally ill. [See Doc. 518 at 4]. After the Court granted the motion, the Defendant absconded. [Id.]. He was apprehended seven months later. [Id.].

In anticipation of sentencing, the probation office prepared a Presentence Report (PSR). The probation officer originally calculated the Defendant's base offense level as 36, based on the quantity of drugs as agreed to in the plea agreement. [PSR at ¶ 29]. The probation officer recommended a two-level enhancement for possession of a dangerous

weapon, a four-level enhancement for being an organizer and leader of criminal activity involving five or more participants, and a three-level reduction for acceptance of responsibility, for a total offense level of 39. [Id. at ¶¶ 30, 32, 36, 37]. After the Defendant absconded, the probation officer revised the PSR to add a two-level enhancement for that conduct and to remove the three-level reduction for acceptance of responsibility, resulting a new total offense level of 43. [See Doc. 518 at 4]. With a total of eight criminal history points, the Defendant's criminal history category was determined to be IV. [PSR at ¶ 55]. An offense level of 43 and criminal history category yielded a life sentence under the Guidelines. [Doc. 518 at 4].

In February 2004, the Court sentenced the Defendant to a term of life imprisonment. [Doc. 268]. The Fourth Circuit affirmed the Defendant's conviction and sentence on direct appeal. United States v. Randolph, 167 F. App'x 942, 949 (4th Cir. 2005).

In 2006, the Defendant filed a motion to vacate his sentence under 28 U.S.C. § 2255. [Doc. 351]. This Court denied his motion. [Doc. 518]. The Defendant successfully moved to reduce his sentence in light of amendments to the Sentencing Guidelines. [Docs. 445, 589]. This Court

3

ultimately reduced his sentence to 324 months (27 years) of imprisonment. [See Docs. 462, 601]. The Defendant is currently located at FMC Lexington and his projected release date is May 27, 2026.[1]

On February 6, 2023, the Defendant filed the present motion for compassionate release. [Doc. 696]. The Court directed the Government to respond to the Defendant's motion. [Text-Only Order entered Feb. 8, 2023]. The Government filed its response on March 10, 2023. [Doc. 697]. The Defendant filed a Reply on April 12, 2023. [Doc. 699].

## II.     DISCUSSION

The Court may not, as a general matter, "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The only exceptions to this general rule are the exceptions specifically delineated by Congress. One such exception is the compassionate release exception, which gives the Court discretionary authority to reduce a sentence upon a finding that "extraordinary and compelling reasons warrant" the reduction. Id. § 3582(c)(1)(A)(i).

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant

---

[1] See https://www.bop.gov/inmateloc/ (last accessed May 25, 2023).

4

to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, it appears that the Defendant has sufficiently exhausted his administrative remedies with the BOP by requesting compassionate release from the Warden. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. This policy statement, however,

5

was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, the Court of Appeals has recognized that the policy statement "remains helpful guidance even when motions are filed by defendants." United States v. Hargrove, 30 F.4th 189, 194-95 (4th Cir. 2022) (quoting McCoy, 981 F.3d at 282 n.7). The Defendant bears the burden of establishing that he is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Here, citing a memorandum from the United States Attorney General dated December 16, 2022, the Defendant contends that his Guidelines range would be significantly lower if he were sentenced today.² Additionally, the Defendant argues that his age, the amount of time that he has already served, his security classification, low risk of recidivism, and his post-conviction rehabilitation all constitute extraordinary and compelling reasons for compassionate release.

The Attorney General's memorandum relied upon by the Defendant provided updated guidance to United States Attorneys regarding general policies regarding charging, pleas, and sentencing in federal prosecutions.³ This memorandum does not apply to matters in which a final judgment has been imposed, nor was it intended to create any substantive or procedural rights.⁴ As such, this policy memorandum does not constitute an extraordinary and compelling reason to reduce his sentence.

---

² In his original Motion, the Defendant contended that the applicable Guidelines range would be 151-188 months if he were sentenced today. [Doc. 696 at 3]. In his Reply, the Defendant revises that range to 210 to 262 months. [Doc. 699 at 2].

³ See Memorandum from the U.S. Att'y Gen. on General Departmental Policies Regarding Charging, Pleas, and Sentencings (Dec. 16, 2022) (accessible at https://www.justice.gov/ag/select-publications) (last accessed May 25, 2023).

⁴ Id.

In any event, the Defendant has failed to demonstrate any significant disparity between the sentence he received in 2004 and any sentence he may have received today. The Defendant admitted to conspiring to possess with intent to distribute 500 grams of crack cocaine. [Doc. 132 at ¶ 3(a)]. Even considering the penalties associated with 500 grams of powder cocaine today, the Defendant's offense and sentence still fall within the applicable statutory range of five to 40 years of imprisonment. See 21 U.S.C. § 841(b)(1)(B)(ii). The Defendant's managerial role in trafficking a significant quantity of drugs, as well as his possession of a weapon during his drug-trafficking activities, would likely disqualify him from a reduced charge even under the new DOJ guidance. The Defendant received a tremendous benefit from the parties' agreement to recommend that his offense involved only 500 grams of cocaine base, rather than the 30 kilograms for which the PSR noted he could have been held responsible. [See PSR at ¶ 79]. Moreover, the Defendant absconded prior to sentencing, reflecting a lack of acceptance of responsibility, for which his sentence was enhanced. Further, the Defendant benefitted even further from the reduction of his sentence from life imprisonment to 324 months due to the retroactive amendments to the Sentencing Guidelines. In short, he has not shown that any disparity with the

8

Guidelines range that might apply today creates an extraordinary and compelling reason for this Court to reduce his sentence.

As for the other factors cited, the Defendant is currently 47 years old and has served 19 years of his sentence. To his credit, the Defendant has participated in a number of prison educational programs (47) and has maintained employment while incarcerated. He further has been scored as a Low Security Level inmate and has been classified as a low risk for recidivism. While all of these factors are commendable, the Court does not find that any of these factors, considered either singly or in combination, constitute extraordinary and compelling reasons for his early release.

Even if the Defendant could establish an extraordinary and compelling reason, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

As noted above, the Defendant's offense of conviction was extremely serious, involving a large-scale drug-trafficking operation and the possession of firearms. Further, the Defendant has a significant and nearly continuous criminal history, beginning at the age of 17 until his incarceration for his

9

present offense, including his absconding before he was sentenced for the present charge. [See PSR at ¶¶ 40-52]. While the Defendant has engaged in commendable post-conviction sentencing, as noted above, he has also incurred a number of serious disciplinary citations, including citations for giving or accepting money without authorization; possession of a dangerous weapon; introduction of drugs/alcohol; fighting with another person; possessing an unauthorized item; and refusing to obey an order. [Doc. 697-1]. In total, the Court finds that the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence and to protect the public from further crimes of the Defendant continue to support the Defendant's current sentence.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's motion for compassionate release is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" [Doc. 696] is **DENIED**.

**IT IS SO ORDERED.**

Signed: June 1, 2023

Martin Reidinger
Chief United States District Judge

11